# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| STEVEN R. GRAY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 1:14-cv-01530-WTL-TAB |
| D. ALSIP, TROYER, | ) |
| Defendants. | ) |

**Entry Discussing Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Steven Gray, an inmate at the Pendleton Correctional Facility, brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants failed to protect him from an attack by other inmates. Specifically, Gray alleges that the defendants failed to protect him from harm. Arguing that Gray failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), defendant Alsip moves for summary judgment and defendant Troyer has joined in that motion. For the following reasons, the motion for summary judgment [dkt 18] is **granted**.

## I. Standard of Review

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372 (2007). The key inquiry is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex,* 477 U.S. at 330.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

## II. Undisputed Facts

Applying the standards set forth above, the undisputed facts are as follows:

On or around October of 2012, Gray was attacked by five unidentified persons in Pendleton Correctional Facility. Gray has filed two other federal lawsuits related to this incident, Case No.

1:13-cv-297-JMS-DML (filed February 21, 2013), and Case No. 1:13-cv00739-TWP-DKL (filed May 6, 2013). The first lawsuit was voluntarily dismissed by Plaintiff "so that he can begin to exhaust his administrative remedies . . . ." The second lawsuit was dismissed by the court *sua sponte* at the outset of the proceedings.

The Indiana Department of Correction ("IDOC") grievance policy provides a process for attempting to resolve complaints about the conditions of a person's confinement. The complete grievance process consists of three steps: (1) an informal complaint, followed by (2) submission of a written form setting out the problem or concern, and the facility's response to the written grievance, followed by (3) a written appeal of the facility's response, and the facility's response to the appeal.

The grievance policy provides that a grievance is not assigned a grievance number until it is determined that it was adequately filed. The policy also requires that an offender wishing to file a grievance do so "no later than 20 working days from the date of the incident giving rise to the complaint or concern." The grievance policy goes on to provide a mechanism for an offender to file an untimely grievance. The policy states: "An offender who does not follow the time limits set out in this administrative procedure should expect to have his grievance or appeal denied for that reason unless he or she is able to show good cause." (Def. Exhibit F at 27.)

Since being incarcerated with IDOC, Gray has properly filed one grievance, and that occurred in 2005. On July 22, 2014, Gray attempted to file a grievance related to the incident alleged in the complaint. Gray provided no explanation for the lateness of this grievance. This grievance was returned on August 4, 2014, for being untimely filed. The grievance was not assigned a grievance number because it was not timely filed. On August 6, 2014, Gray attempted

to appeal the facility's response. No response was issued by the facility regarding the grievance appeal.

### III. Discussion

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004). Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir.2006). But prison officials must not take unfair advantage of the exhaustion requirement. A remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting. *See id*.

The defendants argue that because Gray did not file a timely grievance, he has failed to exhaust his available administrative remedies and this action must be dismissed. Gray responds that he was in the infirmary with serious injuries after the incident at issue in his complaint. He contends that while in the infirmary, he had limited access to forms or writing materials. He also states generally that he "was not physically or mentally able to go thru the process of administrative remedies." In reply in support of the motion for summary judgment, the defendants argue that even if the plaintiff were unable to file grievances while in the infirmary, he still did not file a grievance related to the October 2012 incident until July of 2014. The defendants point out that the plaintiff was able to file two federal lawsuits before he filed his grievance related to the actions at issue in the complaint.

It is undisputed that Gray did not file a grievance until July 2014, nearly two years after the incident that gave rise to his complaint. While Gray asserts that he was unable to file a grievance immediately after the incident, he provides no basis to conclude that he was thwarted in his efforts or physically unable to do so until July of 2014. While the grievance policy contemplates the acceptance of a late-filed grievance if the prisoner is able to show good cause for the untimeliness, it is undisputed that the grievance Gray submitted made no attempt to show good cause for its late filing. The defendants have therefore shown that Gray failed to exhaust his available administrative remedies. *See Dole,* 438 F.3d at 809 (An administrative remedy is available "so long as the administrative authority has the ability to take *some* action in response to the complaint.").

### IV. Conclusion

The motion for summary judgment filed by defendant Alsip and joined by defendant Troyer [dkt 18] is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/11/15

_signature: William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Steven Gray, #906531
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, IN 46064

All electronically registered counsel